# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00075-CV

**Stephen N. Lisson, Appellant**

**v.**

**Texas Growth Fund, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. GN 201604, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Stephen N. Lisson filed a petition for writ of mandamus in the trial court, seeking to have appellee Texas Growth Fund ("TGF")[1] ordered to disclose information Lisson sought under the Public Information Act ("the Act"). *See* Tex. Gov't Code Ann. §§ 552.001-.353 (West 1994 & Supp. 2004). TGF moved for summary judgment, arguing that Lisson's request did

---

[1] Lisson's petition for writ of mandamus named TGF as defendant and stated that "TGF I Management Corp.," also referred to by Lisson as "TGF Management Corp." and referred to in this opinion as "TGF Corp.," was TGF's "executive director, chief administrative officer, chief investment officer, and officer for public information."

In its pleadings, TGF explains that it is "an investment trust created to allow public pension funds and permanent education funds in Texas to invest in the private equity marketplace." TGF was authorized by a 1988 constitutional amendment and established by several "Declarations of Trust." In 1992, TGF's Board of Trustees chose TGF Corp. to manage TGF's investments. TGF and TGF Corp. both assert that TGF Corp. is a private, for-profit corporation not subject to the Act.

not trigger a duty to produce information and that it had not violated the Act. The trial court granted summary judgment in favor of TGF, and Lisson appeals. We will affirm the trial court's judgment.

**Factual Background**

On September 8, 1998, Lisson wrote to James Kozlowski, president of TGF Corp., seeking extensive information about "TGF and any related programs" under the Act. Lisson requested all completed reports, audits, evaluations, and investigations; information about all current and past employees and officers, including name, gender, ethnicity, salary, title, and date of employment; "[a]ll information in the accounts, vouchers and contracts relating to the receipt and expenditure of public funds"; the name of all officials and their voting record on all proceedings; "[a]ll working papers, research material and other information used to estimate the need for and expenditure of public funds"; a description of TGF and any affiliated organizations; all bills for attorneys, accountants, consultants, and other professional services; any settlement agreements to which TGF was a party; and "[a]ll program books and other materials from conferences, workshops and seminars which TGF either attended, was represented at, or sponsored."[2] On September 16, Kozlowski replied, stating that TGF Corp. was a private for-profit corporation not subject to the Act, but that, "in the spirit of cooperation," TGF Corp. would try to accommodate Lisson's request; however, Lisson was asked to narrow his request to more specifically indicate the sought information. Instead of narrowing or clarifying his request, Lisson replied by unsigned facsimile

---

[2] The Act describes some of the general categories of information considered public. Tex. Gov't Code Ann. § 552.022(a) (West Supp. 2004). Most of Lisson's requests are taken directly from section 552.022(a), with little or no further description or detail given.

2

communications that Kozlowski had received "bad advice" that did not excuse TGF Corp. from complying with his request. Faxed correspondence continued between Lisson and TGF Corp., with TGF Corp. continuing to assert that it was not subject to the Act and asking Lisson to clarify his requests. Lisson never clarified or narrowed his original request and eventually filed this suit, asserting TGF Corp. was TGF's information officer and executive director.

TGF moved for summary judgment on the grounds that Lisson did not make an application for information that triggered TGF's duty to respond under the Act. TGF stated that, in an attempt to cooperate, Kozlowski and TGF Corp. asked Lisson to narrow or clarify his request to more specifically identify the documents he sought, but Lisson refused; instead, he responded with "cryptic," "non-responsive," or "indecipherable" statements, inquiries, allegations of malfeasance, and threats of legal action. TGF asserted that Lisson's letter dated September 8, 1998, was not an application that triggered a duty on TGF's part to produce information or request a decision from the attorney general. TGF first asserted that TGF Corp. was not a governmental entity and second, that a governmental body is not obligated to provide information or seek an attorney general's opinion until the requestor narrows or clarifies his request, and that a request for clarification "tolls or sometimes restarts" the ten-day window for a governmental body to respond to a request for information.

As summary judgment evidence, TGF attached the letters from Kozlowski to Lisson, in which Kozlowski explained that TGF Corp., a private for-profit corporation not subject to the Act, asked Lisson to narrow his request so TGF could try to cooperate. Lisson's first response was to fax Kozlowski's letter back with a note, "Jim-Who drafted this?" Lisson then faxed the letter back to

3

Kozlowski again with this notation: "Jim-Wrong, wrong, and wrong; you got some very bad advice—but that's no excuse. We will seek prosecution under § 552.353 unless you have forwarded to us an affirmative defense or provided the requested information." After TGF Corp. again responded that it was not a governmental body subject to the Act and again asked Lisson to narrow his request, Lisson returned the letter via fax with the note:

(1) Wrong—and you know it! Private entities <u>are</u> subject to the Act—just ask GTech, amongst others.

(2) If neither TGF nor the information it holds is subject to the Act, then you would have requested an opinion from the Attorney General—but it's too late now.

(3) You—still—fail and refuse to produce presumed-to-be-public information. Do you know what are the penalties and remedies?

In October 1998, TGF Corp. wrote two more letters to Lisson, stating that, assuming TGF Corp. was subject to the Act, it was permitted to "ask for a clarification and a narrowing of an extremely voluminous and broad request." Lisson faxed one of the letters back, having written, "Both you and Bill knew what you had to do, promptly and not later than the tenth business day." In April 1999, Lisson emailed TGF Corp. as follows:

"only a portion [is subject to this request for a decision]..."; what do you allege to have already furnished, or is this just jerry's usual shenanigans? send immediately, along with affirmative defense, if any. also send immediately either a copy of everything released in compliance with original TPIA or individual (including related third-parties, e.g., volk) affirmative defenses, if any, for refusing with criminal negligence (neither jerry/rob's other integrity-depraved "private entity subject to the open records act" client had a problem apprehending the exact same words, nor did tea–nor even yourself vis-a-vis psf [!] ...did you ever send those records, correspondence, notes, communications and other information, especially that

4

involving, mentioning or referencing this requestor? if not, do so immediately. the cover-up is always worse than the crime, isn't it? especially for the lawyers involved.

TGF responded, "Please clarify your request to explain exactly what information you are seeking rather than responding with allegations of improper conduct." In October 1999, in response to an email from Lisson requesting "all TGF meeting minutes and Resolutions relating to its investment(s) in Hoak, Breedlove et al," TGF Corp. sent Lisson the minutes from a March 1998 TGF Board meeting and Resolution 98-3, approving TGF's investment in HBW Holdings.[3]

## Standard of Review and Statutory Framework

The standards for reviewing the granting of summary judgment are well established: a motion for summary judgment is properly granted only when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P.

---

[3] TGF also introduced as evidence (1) the original petitions filed in other suits by Lisson alleging violations of the Act against the University of Texas at Austin, the University of Texas System, and the University of Texas Investment Management Company; (2) a letter from the attorney general's office describing its attempts to resolve Lisson's numerous complaints related to the University of Texas and stating that it had requested clarifications, scheduled times for Lisson to review documents, and attempted to meet with him to determine the nature of the sought information, but that Lisson never came to review the proffered documents and refused to attend meetings until the sought documents were produced, an impossibility since the meetings were an attempt to discern what information was sought in the first place; and (3) a string of correspondence between Lisson and the Office of the Attorney General relating to Lisson's apparent belief that the attorney general's office was also violating the Act. Lisson's emails to the attorney general are frequently demanding, insulting, and threatening in tone and language, and it is difficult to discern exactly what information he sought. The attorney general's office repeatedly responded to Lisson by stating that it did not understand what he was requesting and did not believe his correspondence amounted to open records requests. The attorney general told Lisson that if he wished to make an open records request, he should "articulate fully that [he] wish[ed] to do so, and describe coherently the documents or categories of documents" sought.

166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the defendant establishes its right to summary judgment, the plaintiff must then raise a fact issue. *Id.*

The Act is intended to promote the philosophy that the people are the masters of the government and are entitled to complete information about actions taken by public officials and employees. Tex. Gov't Code Ann. § 552.001(a) (West 1994). Once a request for public information is made, the governmental body[4] is to produce the information "as soon as possible under the circumstances, . . . within a reasonable time, [and] without delay." *Id.* § 552.221(a) (West Supp. 2004). The governmental body is to either make the information available for inspection and duplication in its offices or mail copies to the requestor if copies are requested and the requestor pays postage and other charges accrued under the Act. *Id.* § 552.221(b). If the information cannot be

---

[4] Under the Act, a governmental body is: (1) a board, commission, department, committee, institution, agency, or office within or created by the executive or legislative branch of government and directed by one or more elected or appointed members; (2) a county commissioners court; (3) a municipal governing body; (4) a deliberative body with rulemaking or quasi-judicial power that is classified as a department, agency, or political subdivision of a county or municipality; (5) a school district board of trustees; (6) a county board of school trustees; (7) a county board of education; (8) a special district's governing board; (9) the governing body of a nonprofit corporation organized under the water code; (10) a local workforce development board; (11) a nonprofit corporation eligible for federal community services grant programs; (12) the part of an organization, corporation, commission, committee, institution, or agency that spends or is supported by public funds; or (13) certain property owners' associations. Tex. Gov't Code Ann. §§ 552.003(1)(A), .0036 (West Supp. 2004). The judiciary is not subject to the Act's requirements. *Id.* § 552.003(1)(B).

produced within ten business days, the governmental body is to certify that fact "in writing to the requestor and set a date and hour within a reasonable time when the information will be available." *Id*. § 552.221(c), (d). The governmental body is limited in what inquiries it can make, but may ask the requestor to clarify an unclear request or narrow a request "[i]f a large amount of information has been requested." *Id*. § 552.222(a), (b) (West Supp. 2004). If a governmental body wishes to withhold information as subject to an exception to the Act, it must ask for an attorney general's decision about whether the information falls into the asserted exception within ten days of receiving the request or the information is presumed to be public and subject to disclosure. *Id*. §§ 552.301, .302 (West Supp. 2004). A requestor may petition for a writ of mandamus to have a governmental body compelled to disclose the requested information if the body refuses to disclose the information or request an attorney general's opinion. *Id*. § 552.321 (West Supp. 2004).

**Analysis**

On appeal, Lisson raises thirty issues, ranging from contentions that the trial court erred in granting summary judgment and that TGF had "an unequivocal duty to provide" the requested information promptly to allegations that TGF's attorneys "tricked and deceived Appellant [Lisson] and the trial court into believing they were Appellant's attorneys" and that TGF's attorneys "concealed the fact that the attorney general's litigation division was their secret, sneaky, stealth co-counsel, co-conspirators, agents and representatives." Lisson, who is representing himself *pro se*, does not provide this Court with record references supporting his allegations, aside from references to an appendix he provided as part of his brief, nor does he offer supporting argument or authority

7

for most of his issues. Lisson never responded to TGF's motion for summary judgment in the trial court below, but instead filed a motion for sanctions and contempt against TGF and its attorneys.

*Pro se* litigants generally are held to the same standards that apply to licensed attorneys. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978); *Chandler v. Chandler*, 991 S.W.2d 367, 378-79 (Tex. App.—El Paso 1999, pet. denied). To allow otherwise would give a *pro se* litigant an unfair advantage over litigants represented by counsel. *Cohn*, 573 S.W.2d at 185; *Chandler*, 991 S.W.2d at 379. Lisson's brief is inadequate under the rules of appellate procedure. With regard to most of his issues, he simply states the issue and makes various assertions or statements of law that do not relate clearly to the issue at hand. He also restates his argument from his original petition. He does not provide supporting authority or otherwise adequately present his arguments, nor does he properly cite this Court to the trial court record; Lisson has therefore waived the vast majority of his complaints by his failure to support his issues by argument and authority. *See* Tex. R. App. P. 38.1(h) (brief must contain clear and concise argument with appropriate citation to authorities and record); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex. 1983) ("Points of error must be supported by argument and authorities, and if not so supported, the points are waived."); *GSC Enters., Inc. v. Rylander*, 85 S.W.3d 469, 475 (Tex. App.—Austin 2002, no pet.) ("As GSC cites no authority in its brief for its argument, we find it has waived this issue on appeal."); *In re Barr*, 13 S.W.3d 525, 555 (Tex. Rev. Trib. 1998, pet. denied) ("Failure to cite authority in support of a point of error on appeal waives the complaint.").

Further, Lisson did not reply to TGF's motion for summary judgment, instead filing a rather cryptic motion for sanctions alleging misconduct by TGF and its attorneys. Only one of

Lisson's thirty issues, the question of whether summary judgment was properly granted in favor of TGF, is reviewable on appeal. This issue is preserved because a nonmovant need not respond to a motion for summary judgment in order to complain on appeal that the motion was insufficient to support the granting of summary judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Castellow v. Swiftex Mfg. Corp.*, 33 S.W.3d 890, 895 (Tex. App.—Austin 2000, no pet.). A nonmovant waives any issues that would have defeated a sufficient motion for summary judgment if he does not present such issues to the trial court. *Clear Creek Basin Auth.*, 589 S.W.2d at 678; *Castellow*, 33 S.W.3d at 895. Lisson's other twenty-nine issues were not properly preserved for appellate review. *See* Tex. R. App. P. 33.1(a); *Hall v. Lone State Gas Co.*, 954 S.W.2d 174, 177 (Tex. App.—Austin 1997, pet. denied) (issues must be presented to trial court to be considered on appeal; failure to raise issue of improper notice in post-judgment motion waived issue on appeal); *see also Lisson v. University of Tex. Inv. Mgmt. Co.*, No. 03-02-00465-CV, 2003 Tex. App. LEXIS 4610, at *4-5 (Austin May 30, 2003, pet. denied) (memorandum op.) (Lisson's appellate brief raised issues not presented to trial court and not supported by citations to record or authority; all but one issue was therefore waived). We will address the propriety of the trial court's granting of summary judgment in favor of TGF.

TGF moved for summary judgment on the grounds that Lisson did not make a request for information that triggered a duty on TGF's part to produce the requested information or request an opinion from the attorney general's office. We agree.

Lisson's "request," first made in his September 8 letter, is tremendously broad. He requests items ranging from "[a]ll completed reports, audits, evaluations and investigations" to "[a]ll

9

program books and other materials from conferences, workshops and seminars" attended or sponsored by TGF. TGF Corp., by its request for a narrowed or clarified request, was not illegally inquiring into Lisson's motives for the request, as he seems to allege. It was merely attempting to obtain an understandable, workable request. *See* Tex. Gov't Code Ann. § 552.222(b) (governmental body may request clarification of unclear request or discuss narrowing request for large amount of information). The Act allows governmental bodies to ask for such clarification or narrowing, *see id*. § 552.222(b); Tex. Att'y Gen. ORD-563 (1990); Tex. Att'y Gen. ORD-304 (1982), and the attorney general has decided that such a request, when reasonable, may toll the ten-day window in which a governmental body must respond to an information request. *See* Tex. Att'y Gen. ORD-663 (1999) ("If a governmental body determines in good faith that it is unclear as to what information is requested, or that the scope of information requested is unduly broad, the governmental body may ask the requestor to clarify or narrow the scope of a request. The time used in clarifying or narrowing the scope of a request does not count as part of the governmental body's statutory allotment of ten business days to request an open records decision."). Lisson did not respond to TGF Corp.'s request for clarification or narrowing except to retort that TGF Corp. was wrong and would suffer the penalty. Lisson's communications with TGF Corp. almost immediately took on a threatening tone and deteriorated into accusations of misconduct. In September 2002, after Lisson had filed the subject suit, he sent a document to TGF's attorneys, stating that TGF's "written admissions" were an admission of a criminal offense. Lisson demanded that TGF's attorneys "resign in lieu of disbarment immediately for having committed, conspired, suborned and/or assisted in your latest (amongst many, many others) criminal and fraudulent act." Instead of responding to TGF's

10

motion for summary judgment, Lisson filed a motion for sanctions, making numerous other allegations of misconduct, mostly on the part of TGF's attorneys.

Lisson asserted that the motion for summary judgment was grounds for sanctions because the attorneys "admit[ted] they created and are engaged in a brazen, corrupt, criminal enterprise and malicious conspiracy to willfully, deliberately and intentionally violate [Lisson's] civil and constitutionally-guaranteed rights." Lisson concludes his motion for sanctions by stating that if TGF or its attorneys "had an affirmative defense . . . which is neither their deceit, deception, dishonesty, fraud, misrepresentation, nor their well-settled legal illiteracy, corruption, duplicity, oppression, racketeering and obstruction of justice, then they criminally withheld it, too." Inflammatory accusations do not constitute a response to TGF's motion for summary judgment, and Lisson presented no evidence or argument to rebut TGF's motion. In response to every request from TGF and TGF Corp., Lisson launched into accusations and threats against TGF Corp., TGF, and the attorneys and other individuals involved.[5]

---

[5] We observe that Lisson's "attack" method of dealing with governmental and other bodies is generally not a productive means of obtaining another party's cooperation. Lisson should be aware that his failure to respond civilly and rationally in his dealings with TGF and TGF Corp., coupled with his failure to support twenty-nine of his thirty appellate issues (some extremely inflammatory and accusatory) could lead the Court to characterize such an appeal as frivolous and subject to sanctions. *See* Tex. R. App. P. 45; *see also Lisson v. University of Tex. Inv. Mgmt. Co.*, No. 03-02-00465-CV, 2003 Tex. App. LEXIS 4610, at *4-5 (Austin May 30, 2003, pet. denied) (memorandum op.) ("Lisson's briefing to this Court includes a reiteration of the factual background of the case as presented in his petition, sets out various provisions of chapter 552 of the Texas Government Code, and raises issues not presented to the district court. We hold that Lisson has waived or failed to preserve for our review all but one of his appellate complaints because he failed to support his contentions with citations to the record or legal authority.").

11

Lisson has made no showing that his initial request was one to which TGF Corp. or TGF could have been expected to respond, as it essentially requested all or most of TGF Corp.'s business records and it was made to the private for-profit TGF Corp., not the governmental body, TGF, against which Lisson brought suit. Finally, Lisson made no showing that he ever responded coherently or rationally to TGF Corp.'s or TGF's requests for clarification or narrowing under section 552.222(b) of the Act. Based on this record, we hold that the trial court did not err in granting TGF's motion for summary judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: January 23, 2004

12